# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| COURTNEY MONTRELL DONELSON,<br><br>Plaintiff,<br><br>v.<br><br>INTERSTATE PARKING LLC,<br><br>Defendant. | Case No. 25-CV-817-JPS<br><br>**ORDER** |

**1. INTRODUCTION**

In May 2025, Plaintiff Courtney Montrell Donelson ("Donelson") sued Defendant Interstate Parking LLC ("Interstate") in a putative class action for violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721–25. ECF Nos. 1, 24. In December 2025, Interstate brought a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for a lack of constitutional standing and for failure to state a claim respectively. ECF No. 28. In their motion, Interstate also requests that the Court amend or strike class certification pursuant to Federal Rule of Civil Procedure 23(d)(1)(D). *Id.* The motion is now fully briefed. ECF Nos. 29, 33, 35. For the reasons stated herein, the motion to dismiss will be granted in part for a lack of standing and denied as moot to the extent it seeks dismissal for failure to state a claim. The motion will be also denied as moot insofar as it seeks to amend or strike class certification. Further, the Court

will grant in part and deny in part Interstate's unopposed motion to seal the document at ECF No. 30.

## 2. LEGAL STANDARD

The Court notes at the outset that when called upon to consider a motion to dismiss filed before a putative class has been certified, the Court looks only to the named Plaintiff's individual claims and circumstances. *Crissen v. Gupta*, 994 F. Supp. 2d 937, 945 (S.D. Ind. 2014) (citing *Tatum v. Chrysler Grp. LLC*, No. 10-4269 (ES), 2012 U.S. Dist. LEXIS 171746, at *11–12 (D.N.J. Dec. 3, 2012); *Tillman v. U.S. Energy Sav. Corp*., No. 08 C 1641, 2008 U.S. Dist. LEXIS 53313, at *10 (N.D. Ill. July 14, 2008); and *Chambers v. Am. Trans Air*, 17 F.3d 998, 1006 (7th Cir. 1994)).

"Questions of standing are appropriately addressed via a motion to dismiss under [Federal] Rule [of Civil Procedure] 12(b)(1) for lack of subject-matter jurisdiction." *Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) (citing *Berger v. NCAA*, 843 F.3d 285, 289 (7th Cir. 2016)). "If the plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the suit must be dismissed . . . ." *Int'l Union of Operating Engr'rs, Local 139 v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020) (quoting *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017)).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). A facial challenge to jurisdiction "tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citing *Apex Digit., Inc. v.*

*Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009)). A facial challenge "require[s] only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Apex Digital*, 572 F.3d at (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (emphasis omitted)). In contrast, in a factual challenge, when "the complaint is formally sufficient but the contention is that there is *in fact* not subject matter jurisdiction," a court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* at 444 (first quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.2d 942, 946 (7th Cir. 2003) then quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008); other citations omitted).

## 3. FACTS[1]

Interstate is a Wisconsin limited liability company that manages private parking lots throughout the United States. In the lots it manages, Interstate installs plate recognition cameras that capture the license plates of vehicles entering and leaving the lot. When Interstate determines that a parking charge is due, it requests the vehicle owner's data from the Department of Motor Vehicles' records and sends a parking charge. In February 2024, Interstate sent Donelson six letters to his home address reporting a parking violation and demanding fees. The letters included photos of a vehicle and Donelson's full name and address. Donelson

[1]This summary of facts is drawn from the operative complaint, ECF No. 24, as required at this stage. *Carroll v. Morrison Hotel Corp*., 149 F.2d 404, 407 (7th Cir. 1945) ("Ordinarily upon a defendant's motion to dismiss, the court may consider only the allegations in the complaint."). Citations thereto are omitted.

contends that the automobile in the photo is not his, he does not know the owner, and he never parked at the lot operated by Interstate.

Donelson states that the putative class members also "had their personal information queried from non-public DMV records, and received parking tickets at their residences." In sum, Donelson alleges that Interstate has obtained, used, and disclosed his and the putative class members' personal information without their consent and in violation of the DPPA to send parking notices to their homes. Donelson states that Interstate's conduct resulted in "harm, including wasted time, violations of their statutory privacy rights, harassment, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion in a space that is personal and private to Plaintiff and the Class Members." Pursuant to the DPPA, Donelon seeks declaratory relief, statutory damages of $2,500 for each violation of the DPPA, and reasonable attorneys' fees and costs and other litigation expenses.

## 4. ANALYSIS

### 4.1 Standing

#### 4.1.1 Standing to Assert a DPPA Claim

Interstate first argues that Donelson lacks standing to assert a DPPA claim. ECF No. 29 at 7.

"The plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the required elements of standing." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004) and citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 561). "A plaintiff must demonstrate standing for each form of relief sought." *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d

869, 890 (7th Cir. 2013)); *see also Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."). "In order to have standing, a litigant must 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision." *Remijas,* 794 F.3d at 691–92 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Casillas v. Madison Ave. Assocs., Inc*., 926 F.3d 329, 333 (7th Cir. 2019)).

Interstate specifically argues that Donelson cannot allege actual injury in fact, harm, or damages. ECF No. 29 at 7. Interstate appears to present both a facial and a factual attack on standing. *Id.* at 5. However, because the Court finds that Donelson lacks standing facially, it will not consider Interstate's factual allegations filed with its motion. ECF No. 29-1.

Interstate notes that it is not enough for Donelson to allege damages under the DPPA, but that "the court must assure itself that a concrete injury beyond a bare statutory violation exists." *Id.* at 8 (citing *TransUnion*, 594 U.S. at 427). Interstate is correct insofar that Donelson cannot create an injury merely by pointing to an alleged violation of DPPA. Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,' . . . . [but] Congress may [not] 'enact an injury into existence.'" *Pierre v. Midland Credit Mgmt.*, 29 F.4th 934, 938 (7th Cir. 2022) (first quoting *Lujan*, 504. U.S. at 578, then quoting *TransUnion*, 594 U.S. at 426). "Instead, a plaintiff 'must show that the violation harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Stegmeyer v.*

*ABM Indus.*, No. 24-cv-00394, 2026 WL 879588, at *3 (N.D. Ill. March 30, 2026) (quoting *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021)).

Donelson alleges that he suffered harm in the form of "violations of [his] statutory privacy rights, harassment, annoyance, nuisance, invasion of [his] privacy, and intrusion upon seclusion." ECF No. 24 at 12. Donelson alleges solely intangible harms. To determine whether such a harm is concrete for standing, courts "look to both history and Congress's judgment." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 639 (7th Cir. 2023) (collecting cases). When analyzing history, courts ask whether the alleged injury "has a historical or common-law analog," however "the Court need not identify an 'exact duplicate." *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979 (7th Cir. 2023); *Stegmeyer*, 2026 WL 879588 at *4 (citing *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021)).

First, the Court will analyze whether Donelson's injury has a common-law analog. Here, Donelson's injury is most analogous to a common law privacy tort, such as invasion of privacy or intrusion upon seclusion. ECF No. 29 at 10–15 (arguing that Donelson cannot sufficiently allege an invasion of privacy injury); ECF No. 33 at 10–13 (arguing that the elements of intrusion upon seclusion are met). "[T]he tort of invasion of privacy encompassed four theories of wrongdoing: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light." *Pucillo*, 66 F.4th at 639–40 (quoting *Persinger*, 20 F.4th at 1192). Therefore, although the pleadings refer to both invasion of privacy and intrusion upon seclusion, the Court will focus on the most apt invasion of privacy theory, intrusion upon seclusion. *See Pucillo*, 66 F.4th at 640; *Stegmeyer*, 2026 WL 879588 at *4.

"Intrusion upon seclusion 'occurs when a person intrudes upon the solicitude or seclusion of another or his private affairs or concern' and such an intrusion 'would be highly offensive to a reasonable person.'" *Stegmeyer*, 2026 WL 879588 at *4 (quoting *Pucillo*, 66 4.th at 640). When asking whether Donelson's injury bears a close relationship to the traditional harm of intrusion upon seclusion the Court looks "to the kind (rather than the degree) of harm that the common law recognize[s]." *Pucillo*, 66 4.th at 641 (citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020)). Donelson need not prove every element of intrusion upon seclusion, "[i]t [would] [be] enough to say that the harm alleged in [his] complaint resembles the harm associated with intrusion upon seclusion." *Persinger*, 20 F.4th at 1192 (citing *Gadelhak*, 950 F.3d at 462–63).

The Court is not convinced that the disclosure of Donelson's address information alone amounts to an intrusion upon seclusion, and Donelson points to no cases from this circuit or supporting state statutory law to support this argument. Home addresses are not viewed as embarrassing or inherently private. *See Baysal*, 78 F.4th at 979; *Stegmeyer*, 2026 WL 879588 at *4 ("The disclosure and use of home addresses alone does not automatically grant standing."). The better question is whether receipt of unwanted postal mail intruded on Donelson's seclusion.

Interstate analogizes this case to *Baysal*. ECF No. 29 at 8–11. In *Baysal*, the plaintiffs sued under the DPPA after their driver license numbers were improperly disclosed to strangers using an insurance quote feature. 78 F.4th at 977. The Seventh Circuit found that plaintiffs did not have standing, as the disclosure of driver's license numbers was not analogous to a historical injury and "not potentially embarrassing or an intrusion on seclusion." *Id.* at 979–80. Importantly, the Seventh Circuit also found a Fourth Circuit case,

*Garey v. James S. Farrin, P.C.*, distinguishable. *Id.* at 980. In *Garey*, the court found standing when lawyers obtained car accident reports, which included the name and addresses of drivers involved in the incident, and used that information to mail unsolicited attorney advertising materials. 35 F.4th 917, 919–20 (4th Cir. 2022). The Seventh Circuit found *Garey* distinguishable on the basis that defendants there had disclosed home addresses to send unsolicited advertisements and that "[a]s in junkfax and robocall cases, the analogous tort is intrusion on seclusion." *Baysal*, 78 F.4th at 976.

Here, Donelson alleges that Interstate obtained his name and address through DMV record searches and sent him six letters for parking violations and ticket fees. ECF No. 24 at 5–6. Donelson further alleges that these letters were inappropriate as they were for a vehicle that is not his, and he never parked at Interstate's lot. *Id.* Thus, Donelson's case is distinguishable from both *Baysal* and *Garey*. Unlike *Baysal*, Donelson's home address was disclosed. And, unlike *Garey*, the mail sent to Donelson was not an advertisement, but as he claims, invalid bills.

The facts here are close to *Stegmeyer v. ABM Industries*, where plaintiff sued a corporation operating a parking lot after they obtained his personal driver's information to send plaintiff text messages and mailed bills for parking violations. *Stegmeyer*, 2026 WL 879588 at *1. There, the court found that there was no standing because "receiving unwanted bills in the mail is not akin to receiving unsolicited advertisements." *Id.* at *4. The court further found that while plaintiffs alleged the bills were unsolicited because they did not elect to receive them, they "[did] not go so far as to allege that the demanded payments were invalid." *Id.* Conversely, here, Donelson alleges that not only are the bills unsolicited, but that they are invalid.

Donelson asserts that using his personal information to "flood his home mailbox" with invalid violations and "pressure a person at home for a debt is far closer to traditional intrusions on private affairs." ECF No. 33 at 12. In contrast, Interstates argues that "sending information to a residence [is not] highly offensive or intrusive." ECF No. 29 at 13. Donelson and Interstate both reference *Pucillo* to support their arguments. In *Pucillo,* the Seventh Circuit found that the plaintiff did not have analogous injury to intrusion upon seclusion after he received two debt collection letters after his debt had been discharged by a bankruptcy court. 66 F.4th at 641–43. The court found that "while courts have allowed intrusion upon seclusion liability for 'irritating intrusions,' there is nothing inherently bothersome, intrusive, or invasive about a collection letter delivered via U.S. Mail." *Id.* at 640 (quoting *Gadelhak*, 950 F.3d at 462).

The Court reads *Pucillo* to suggest that the receipt of debt collection letters, even if misleading, do not invade a person's privacy. However, *Pucillo* is distinguishable in the fact that it did not an allege an invalid disclosure of one's address, and the plaintiff received only two letters, delivered one year apart. *Id.* at 641–42. Because the Court finds that it is a close call as to whether the harm Donelson alleges in sufficiently analogous to a common law analog, it will turn to the second question to determine whether an injury is sufficiently concrete for standing, which is Congress' judgment.[2]

[2]Donelson briefly argues that standing is otherwise warranted because he suffered wasted time, and because Interstate's disclosure is analogous to public disclosure of private facts. ECF No. 33 at 12–13. Both arguments are without merit. Wasted time, without more, is not a recognizable injury in this circuit. *See Price v. Village of Homewood*, No. 24-1896, 2024 WL 4502106, at *2 (7th Cir. 2024) ("The fact that Price spent time or money challenging the ticket and pursuing this claim

In enacting the DPPA, Congress "responded to at least two concerns over the personal information contained in state motor vehicle records." *Maracich v. Spears*, 570 U.S. 48, 57 (2013). The first concern was related to "growing threat[s] from stalkers and criminals who could acquire personal information from state DMVs." *Id.* The second concern addressed "the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Id.* Here, Donelson does not allege that his individual safety was threatened by the disclosure, making the first concern inapplicable. Second, the bills Donelson received, while allegedly false, are not reflective of marketing and solicitation efforts. Thus, while the DPPA was enacted to "protect individual privacy" from "bulk solicitation," Donelson's injury is not a result of such actions. *Maracich*, 570 U.S. at 67. Thus, Congress' judgment favors the view that Donelson lacks standing.

Accordingly, the Court finds that Donelson lacks standing to bring a claim under the DPPA.

#### 4.1.2 Standing to Seek Declaratory and Injunctive Relief

Although the Court has determined there is no standing for a DPPA claim, because the argument is close, the Court will also address Interstate's argument that Donelson lacks standing to seek declaratory and injunctive relief. ECF No. 29 at 15–16. The Court identifies no request by Donelson for

---

cannot create standing." (citing *Dinerstein v. Google, LLC*, 73 F.4th 502, 522–23 (7th Cir. 2023) and *Simic v. City of Chicago*, 851 F.3d 734, 739 (7th Cir. 2017))). Further, Donelson's injury is not akin to the public disclosure of private facts because disclosure to a third-party vendor alone does not meet the element of publicity. *See Nabozny v. Optio Solutions LLC,* 84 F.4th 731, 735 (7th Cir. 2023) (finding that disclosure of information to a third party-mail vendor did not meet the element of publicity).

injunctive relief in his amended complaint. While Donelson did include a request for injunctive relief in his original complaint, ECF No. 1 at 13, the amended complaint supersedes the original "and renders the original complaint void." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004) (citing *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir.1961)). Thus, the Court will only focus its analysis on whether there is standing for declaratory relief. Donelson specifically requests "[a]n order declaring that [Interstate's] action . . . violate the DPPA." ECF No. 24 at 16.

"The purpose of declaratory judgment is to deprive the defendant of delay as a weapon by declaring the parties' legal rights in anticipation of some future conduct." *Giasson v. MRA*, 777 F. Supp. 3d 913, 927–28 (E.D. Wis. 2025) (quoting *Thompson v. Ortiz*, 619 F. App'x 542, 544 (7th Cir. 2015)). "A plaintiff lacks standing to seek declaratory judgment where a declaration of the parties' legal rights will provide no relief." *Id.* (collecting cases).

Declaratory judgments "are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct." *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003) (citing *Bontkowski v. Smith*, 305 F.3d 757, 761 (7th Cir.2002)) (further citation omitted). The Court does not find it clear whether Donelson is seeking true declaratory relief. Rather, it appears that he is requesting an adjudication of liability. *See* ECF No. 24 at 16 (requesting "[a]n order declaring that [Interstate's] action . . . violate the DPPA); *see also Johnson* 72 F. App'x at 478 ("Declaratory judgments are not meant simply to proclaim that one party is liable to another." (citing *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1553–54 (Fed. Cir. 1994) (en banc))).

Further, it is unclear how Donelson's sought declaration, that Interstate violated the DPPA in obtaining his information, would redress

the injuries alleged in the complaint. Donelson does not allege in his amended complaint that he is experiencing, or that he will experience, an ongoing harm that could be corrected by a declaratory judgment. Rather, Donelson alleges past harm stemming from a violation of the DPPA. *See Dusterhoft v. OneTouchPoint Corp.*, No. 22-cv-0882-bhl, 2024 WL 4263762, at *8 (E.D. Wis. Sep. 23, 2024) ("Plaintiffs have alleged injuries sufficient to support standing stemming . . . from a data breach that has already occurred . . . Plaintiffs' requested declaratory relief would do nothing to redress those injuries. Declarations that [the defendant] breached a duty it owed them or otherwise acted unlawfully would not, standing alone, provide any relief to Plaintiffs."). Accordingly, the Court finds that Donelson does not have standing to seek declaratory relief.

Because the Court resolves the motion to dismiss on standing alone, it does not address the parties' arguments about whether the operative complaint sufficiently states a claim on which relief can be granted. It also does not address arguments regarding striking or amending the class definition. Interstate's motion will be denied as moot in both respects.

### 4.2 Motion for Leave to File Under Seal

Interstate has also moved the Court to seal the unredacted declaration filed in connection with its motion to dismiss. ECF No. 31.[3] Interstate moves for this declaration to be sealed because it "includes motor vehicle information relating to [Donelson's] license plate" and Donelson

[3]While Interstate's motion appears on the docket as a motion to restrict, the filing itself requests leave to file under seal, thus the Court will treat it as a motion to seal.

alleges that "Interstate's access to and use of his motor vehicle information constitutes an invasion of privacy." *Id.* at 1.

Sealing and restricting court filings is an exception to the general rule that litigation should be "conducted in public to the maximum extent consistent with respecting . . . facts that should be held in confidence." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) (collecting cases), abrogated on other grounds by *RTP LLC v. ORIX Real Est. Cap.*, 827 F.3d 689, 691–92 (7th Cir. 2016); *see* GEN. L.R. 79(d)(3) ("Absent a sufficient factual basis demonstrating good cause sufficient to seal the documents or materials, the motion [to seal] must be denied and the documents or materials publicly filed . . . .").

The Court finds that the potential personably identifiable information in the document demonstrates good cause to warrant protection.[4] However, instead of sealing the document, which would render it unavailable to everyone, including the parties, the Court will restrict it, limiting access to only the parties and the appropriate court staff. *See Dotson v. Faulkner*, No. 20-CV-1767, 2023 WL 3322171 at *1–2 (E.D. Wis. May 9, 2023) (restricting exhibit instead of sealing it). Accordingly, the Court will grant in part Interstate's motion to seal; the document at ECF No. 30 shall remain restricted until further order of the Court.

## 5. CONCLUSION

[4]The Court maintains that while Donelson may not sufficiently allege an injury analogous to a common law privacy tort, restricting access to this information is separately justified by the potential public disclosure of the information, especially considering the parties' argument as to the proper owner of the vehicle implicated.

The Court is obligated to grant Interstate's motion to dismiss for lack of standing and dismiss the operative complaint and this action without prejudice for lack of standing. *Chuluunbat v. Weltman, Weinberg & Reis Co., LPA*, No. 21-1584, 2022 WL 1599325, at *2 (7th Cir. May 20, 2022) ("A dismissal for lack of Article III standing is necessarily without prejudice." (citing *White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021)). Further, because the Court finds no standing, it will also deny as moot Interstate's motion to strike or amend the class definition. Lastly, the Court will grant in part and deny in part Interstate's motion to seal.

Accordingly,

**IT IS ORDERED** that Defendant Interstate Parking LLC's motion to dismiss Plaintiff Courtney Montrell Donelson's amended complaint and to strike or amend the class definition, ECF No. 28, be and the same is hereby **GRANTED in part and DENIED in part as moot** as stated herein;

**IT IS FURTHER ORDERED** that Defendant's motion to seal, ECF No. 31, be and the same is hereby **GRANTED** as stated in this Order; the document at ECF No. 30 shall be restricted until further order of the Court; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of October, 2026.

BY THE COURT:

______________________________

J. P. Stadtmueller
U.S. District Judge